MORTON WEINRESS,

*vs.*

LEE C. BLAND, JACK M. GOODARD, ARNOLD M. GOTTHILF, MORRIS H. GOTTHILF, LOUIS H. HRABACK, LOUIS LEVINSON, CHARLES PLOHN, DAVID H. SLOANE, THEODORE T. TOOLE, FRANK R. TURNER and UNIVERSAL LABORATORIES, INC., a Delaware corporation.

*New Castle, January 12, 1950.*

*Hugh M. Morris,* and *Edwin D. Steel, Jr.,* of the firm of Morris, Steel, Nichols & Arsht, for plaintiff.

*John Van Brunt, Jr.,* of the firm of Killoran & Van Brunt, for defendant Morris H. Gotthilf, appearing specially.

*Clair J. Killoran,* of the firm of Killoran & Van Brunt, for defendant Universal Laboratories, Inc.

SEITZ, Vice Chancellor: The issue for determination is the validity of an order of sequestration.

Plaintiff instituted a stockholder's derivative action against Universal Laboratories, Inc., a Delaware corporation (here called "Universal") and a number of its officers and directors, one of whom is the defendant Morris H. Gotthilf (here called "Gotthilf"). In three of the counts of the complaint, plaintiff seeks a money judgment in excess of $500,000.00 against the individual defendants for acts of malfeasance. In the fourth count plaintiff seeks, *inter alia,* cancellation of Universal's note held by Gotthilf and the return of the stock collateral.

Based on the allegation that the defendant Gotthilf was a nonresident of Delaware, plaintiff moved for and obtained an order of seizure (hereinafter called "sequestration") under the second paragraph of *Paragraph* 4374 of the *Revised Code of Delaware* 1935. The order directed

Gotthilf to appear and answer the complaint on or before a fixed day, and appointed a sequestrator of all of the right, title and interest of Gotthilf in and to claims against Universal based upon a nonnegotiable promissory note dated January 31, 1949. The note was executed and delivered to Gotthilf by Universal in New York state and was payable both as to principal and interest in New York.

Universal delivered to Gotthilf in New York as security for such note certain collateral consisting of 1,000 shares of Sleight Metallic Ink Company of Illinois, Inc., stock (hereinafter called "Sleight"). Sleight is a Delaware corporation and its stock is presumably subject to the provisions of our Uniform Stock Transfer Act, 45 *Del. Laws, c.* 159.

The principal terms of the note are as follows:

"The Payee may look only to the Collateral for the payment of this Note and the interest thereon, and may not look to the general assets of the Company for the payment thereof. * * *.

* * * * * *

"On July 31, 1950 and on July 31 in each year thereafter until this Note shall be paid in full, the Company shall apply to the prepayment of this Note, without premium an amount equal to the entire net earnings of Sleight Metallic in excess of $100,000 for the preceding fiscal year, provided that such prepayment shall in no event exceed $50,000 in any one year. 'Net earnings' of Sleight Metallic as used herein shall mean net earnings available for dividends on the Common Stock of Sleight Metallic on a non-consolidated basis, after deduction of all proper accounting charges, less the amount of interest payments made during such year by the Company under this Note; provided, however, that in computing the deduction for Federal and State income taxes the amount of such interest payments made by the Company shall be treated as an expense of Sleight Metallic."

The note is payable at the maturity date, January 31, 1962, conditionally, to the extent of the value of the collateral only, since the general assets of the maker (Universal) do not secure the note indebtedness.

The defendant Gotthilf did not appear generally, but

appeared specially and moved to quash the order of sequestration. This is the decision upon that motion.

Gotthilf's motion sets forth many reasons why the order of sequestration should be quashed. They may be summarized as follows:

1. *Paragraph* 4374 of the *Revised Code of Delaware* 1935 does not grant authority to sequester a "mere indebtedness".

2. *Paragraph* 4374 of the *Revised Code of Delaware* 1935 refers to a debt having a situs at the creditor's domicil only.

3. An unmatured obligation or an obligation which is contingent in some respects is not subject to sequestration.

4. The exercise of jurisdiction over the note indebtedness is a useless act because of the lack of power over the stock collateral.

5. The sequestration order is adverse to the public policy of this State as disclosed by the Uniform Stock Transfer Act.

6. In a stockholder's derivative suit a corporate debt cannot be sequestered because a party cannot sequester a debt due from himself.

Gotthilf first contends that the language of the second paragraph of *Paragraph* 4374 of the 1935 *Revised Code* does not authorize the seizure of a debt. Insofar as pertinent, it provides:

"If it shall appear in the bill of complaint that the defendant or any one or more of the defendants is a nonresident of the State of Delaware, it shall be lawful for the Chancellor to make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Chancellor may direct,

not less than once a week for three consecutive weeks. The Chancellor shall have power to compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Chancellor to pay the demand of the complainant, if the defendant shall not appear, or shall otherwise default. * * * Any transfer or assignment of the property so seized as aforesaid after the seizure thereof shall be void and after the sale of said property is made and confirmed, the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the said purchaser all the right, title and interest of the defendant in and to said property as fully as if the defendant had transferred the same to the purchaser in accordance with Law."

Gotthilf points out that the statute provides for the seizure of "property", and unlike the legal attachment statute does not also provide for the seizure of "rights and credits". See *Paragraphs* 4610 and 4612 of the *Revised Code of Delaware* 1935. Gotthilf argues that because the statute is in derogation of the common law it must be strictly construed, citing *National Bank of Wilmington & Brandywine v. Furtick*, 2 *Marv.* 35, 57, 58, 42 *A.* 479, 44 *L.R.A.* 115, 69 *Am.St.Rep.* 99. He then seizes upon the omission of the language "rights and credits" in the sequestration statute in contrast to its existence in the attachment statute, and argues that a debt is not within the purview of the sequestration statute.

The contention that the word "property" as used in our sequestration statute is to be strictly construed must, however, be considered in the light of the Chancellor's statement in *Blumenthal v. Blumenthal,* 28 *Del. Ch.* 1, 35 *A.* 2*d* 831, 836, affirmed 28 *Del. Ch.* 448, 59 *A.* 2*d* 216, to the effect that the word is to be given a "broad and comprehensive meaning". See also *Perrine, et al., v. Pennroad Corporation, et al.,* 19 *Del. Ch.* 368, 168 *A.* 196. Moreover, our Supreme Court has recently pointed out that the rule of strict construction is only of limited assistance in resolving a problem of statutory construction.[1] Certainly

---

[1] *Blaustein v. Standard Oil Co.*, 4 *Terry* 449, 49 *A.* 2*d* 726.

there are many situations where the language "real and personal property" includes intangibles, e. g., *Wapsie Power & Light Co. v. City of Tipton*, 197 *Iowa* 996, 193 *N.W.* 643. Indeed, such language may be considered to be the broadest possible language because the addition of the words "rights and credits" following such language amounts to no more than a reference to certain types of personal property.

Gotthilf relies on the statutory history of *Paragraph* 4374 to support his contention that it was not intended to include "rights and credits". I do not believe this history supports his contention. It seems to me that the use of the language "rights and credits" in the attachment statute and the absence of such words in the sequestration statute involve no more than a question of draftsmanship. No good reason is suggested why the Legislature should see fit to give a remedy by way of a seizure of intangibles in a law action and preclude their seizure in an equity action. The deletion of the words "rights and credits" from an earlier statute dealing with the seizure of property in equity is relied upon by Gotthilf as showing a legislative intent to narrow the effect of the statute. See *Paragraph* 3856 of the *Revised Code of Delaware* 1915. However, this court pointed out in *Perrine, et al., v. Pennroad Corporation, et al., supra,* that the earlier statute was probably repealed by 36 *Delaware Laws, Chapter* 268, because it had been suggested in a case that it conferred a power of doubtful constitutionality.[2] I can think of no good reason why the words "real and personal property" as used in *Paragraph* 4374 of the *Revised Code of Delaware* 1935 should be construed as not including intangibles. I, therefore, conclude that the indebtedness here involved is property within the meaning of that term as employed in *Paragraph* 4374 of the *Revised Code of Delaware* 1935. A

---

2*See Skinner v. Educational Pictures Securities Corp., et al.,* 14 *Del. Ch.* 417, 129 *A.* 857.

"mere indebtedness" may, therefore, be sequestered under our statute.

Gotthilf next argues that if, as I have concluded, *Paragraph* 4374 of the *Revised Code of Delaware* 1935 does not include an indebtedness, it should be construed to include only an indebtedness having a "situs" at the creditor's domicil. Since Gotthilf the creditor is not domiciled in Delaware, he argues that the present indebtedness may not be sequestered under the statute. Does the present sequestration statute fairly include the authority to seize debts at the debtor's domicil, and if so, is such a statute constitutional?

Gotthilf places great reliance upon the Court of Errors and Appeals case of *National Bank of Wilmington & Brandywine v. Furtick, supra*. It seems to me that Gotthilf fails to appreciate fully the fact that the *Furtick* case involved a question of statutory construction. As I read that opinion the court said that under the then existing statute, garnishment would not lie to condemn a debt owed by a nonresident (having only a statutory agent in this State) to a nonresident defendant. The court did obviously take the position, although in view of its first holding it may perhaps be accepted as no more than a considered dictum, that "for purposes of jurisdiction in attachment proceedings, the *situs* of a debt is at the domicil of a creditor, unless otherwise stipulated." [2 *Marv.* 35, 42 *A.* 483] However, the court stated immediately following the quoted language that

"An exception to this rule appears to be where. the garnishee is a resident of the State where the proceedings are instituted, and is under the exclusive jurisdiction of that State, and as a consequence under its power to determine for itself the rights and obligations arising from his contracts, and the mode of enforcing them; * * *. We avoid expressing an opinion upon these cases."

The court in the *Furtick* case explicitly refused to decide the issue posed by the present factual situation, viz.,

where the person owing the debt sequestered is a resident. Indeed, to the extent it may be relied upon, it points out that an exception has been recognized which permits garnishment where the debt garnished is owed by a resident of the jurisdiction where the suit is commenced. See also *Standard Oil Co. v. Superior Court,* 5 *Terry* (44 *Del.*) 538, 62 *A.2d* 454.

Since the debt here sought to be sequestered is owed by a Delaware corporation, I conclude that this court has ample jurisdiction over the sequestered corporation. An attempt to deal with the "situs" of an intangible by the employment of concepts which grew out of disputes involving tangibles only tends to obscure the realities. Control of the debtor is important because the court can effectively tell him whom he must pay. A recognition of this fact would seem to be no more than judicial realism.

A reading of the decisions of the United States Supreme Court, *Harris v. Balk,* 198 *U.S.* 215, 25 *S.Ct.* 625, 49 *L.Ed.* 1023; *Chicago, Rock Island & P. Railway. Co. v. Sturm,* 174 *U.S.* 710, 19 *S.Ct.* 797, 43 *L.Ed.* 1144, shows that a state has jurisdiction, if it cares to exercise it, to garnish any debt owed by a person subject to its process, and that such garnishment is not only constitutional but will be entitled to full faith and credit. Delaware, therefore, has jurisdiction of a type which entitles its judgment in such a case to full faith and credit.

Does our sequestration statute cover the situation here presented? The mesne process of attachment of property in Chancery in this State was first effectively provided for in 1929 by the amendment of *Chapter* 268 of *Volume* 36, *Laws of Delaware.* This is the same provision as appears in the second paragraph of *Paragraph* 4374 of the *Revised Code of Delaware* 1935. When this statute with its broad language was enacted, the *Furtick* case had long since been decided, with its suggested exception in the case of a garnishment against a resident debtor. Moreover, the

United States Supreme Court had also long before decided in the *Sturm* and *Balk* cases that a debt owed by a debtor within the court's jurisdiction might be seized in an action against a nonresident defendant. Such factors certainly do not require this court to say that the broad language of our sequestration statute should be construed to be inapplicable to the case of a resident debtor. On the contrary, the comprehensive terms employed in the sequestration statute would seem to indicate an intent to cover every situation which it was constitutionally possible to cover—including the one now before the court. I can find no policy which would constrain me to construe our sequestration statute as not covering a debt owed by a resident debtor. The fact that this debt is payable in New York does not impress me as a reason for excluding such debts from the operation of the statute. See *Steer v. Dow,* 75 *N.H.* 95, 71 *A.* 217, 20 *L.R.A.,* (*N.S.*), 263; *Nichols v. Hooper,* 61 *Vt.* 295, 17 *A.* 134, and see *Forest Products Co. v. Magistrelli,* 1 *Terry.* 525, 14 *A.* 2d 397. I conclude that for purposes of the application of *Paragraph* 4374 a debt owed by a debtor domiciled in this State has a situs in Delaware.

Gotthilf next argues that an unmatured or contingent obligation is not subject to sequestration.

Plaintiff's attorney tacitly concedes that the obligation here sought to be sequestered is unmatured. He also assumes, as Gotthilf argues, that an unmatured debt or one subject to contingencies which have not occurred cannot be garnished at law in Delaware. Plaintiff argues, however, that it does not follow from these conceded and assumed principles that an unmatured or contingent indebtedness cannot be sequestered in equity under *Paragraph* 4374 of the *Revised Code of Delaware* 1935. Plaintiff points out that in Delaware basic procedural differences exist between a garnishment at law and a sequestration in equity, and, says plaintiff,

"These procedural differences make inapplicable to equitable

sequestrations the doctrines applied by the law courts in exempting unmatured or contingent claims from garnishment."

Under the garnishment law a garnishee is served with summons and he must appear at the clerk's office at which time the plaintiff either accepts the garnishee's answer or directs the entry of a plea of *nulla bona*. If plaintiff elects to take the garnishee's answer, the garnishee is asked whether he owed the defendant any money at the time of the attachment or since. If the garnishee admits an amount due to the defendant, this has all the characteristics of a judgment confessed, and a judgment upon the declaration is entered against the garnishee upon which execution may issue. If plaintiff elects to have a plea of *nulla bona* entered on behalf of the garnishee, then a trial ensues to determine whether or not the garnishee was in fact indebted when the plea was entered. If it is determined by the trial that the garnishee was in fact indebted to plaintiff, a judgment is entered against the garnishee in the amount of the indebtedness. See II *Woolley on Delaware Practice, pp.* 815-822.

Our Supreme Court has stated in *Loft, Inc., v. Guth, et al., (United States, Intervener),* 25 *Del.Ch.* 363, 367, 19 *A.2d* 721, 722:

"The sole primary purpose of the statute was to compel the appearance of a nonresident in an action in the Court of Chancery. The Chancellor, under the statute, is empowered to enter an order directing appearance, and to direct service of the order by mail or otherwise, or by publication; and he is further empowered to compel appearance by the seizure of all or any part of the defendant's property within the jurisdiction of the court, and to sell the property to satisfy any decree unless security is given. There is no mention of the word, 'sequestrator' in the statute, nor is the word defined in any rule of court. It was not the purpose of the Legislature to establish and define an office; rather it was to confer on the Chancellor wide authority for the compulsion of appearance and the satisfaction of decrees, leaving to him to devise, in the particular case, the method best suited to accomplish the purpose.

"There seems to be no compelling reason for the appointment of any person as a sequestrator, or to give that name to the person appointed to make the seizure. The Sheriff, who ordinarily executes

the writs of the Court of Chancery, could as well have been designated to seize and hold the shares of stock and any dividend paid on them; or the shares and the dividends could have been held in the name of the court. The word, 'sequestrator', is merely a convenient designation for the person selected to carry out the court's order; and whatever the appellation given, a sequestrator is merely the court's auxiliary, its executive agent to hold the possession of the property seized under the direction of the court for the purpose of accomplishing the statutory purposes. When so seized the property is in *custodia legis*."

It is apparent from the quoted language that the primary function of the statute is to compel an appearance, and unlike the attachment statute at law, the seizure of property under *Paragraph* 4374 does not vest title in the court's appointee called, for convenience, a "sequestrator". In the event the plaintiff procures a judgment, the statute calls for a sale of the seized property to satisfy such judgment in the event the property is not released. Consequently, the considerations which militate against attaching unmatured and contingent obligations do not apply under the procedure set up by *Paragraph* 4374. Obviously a process which provides for the seizure of unmatured and contingent obligations may more effectively produce an appearance than a seizure of a matured or a non-contingent obligation. I say this because the sale of an unmatured or contingent obligation, after seizure under the statute, might adversely affect the sale value of such asset. In consequence, it might bring a price substantially less than its worth to the person whose property is being sold. He would thus be impelled to appear and defend—the primary purpose of the statute.

Having in mind, therefore, the purpose behind the provisions of *Paragraph* 4374 and considering the mechanics set forth therein for the seizure of property, I conclude that the statute authorizes the seizure of the obligations here seized even though it be considered unmatured and contingent in some respects.

I next consider the contention that the exercise of juris-

diction over the note indebtedness is a useless act because of the lack of power over the stock collateral.

Generally speaking, the nonresident creditor's interest in the collateral, like that of the resident creditor's, passes or disappears, as the case may be, when the principal debt secured by such collateral is no longer owed to such creditor. Normally, if the creditor assigns the debt, the assignee is also entitled to possession of the collateral. See 2 *Williston on Contracts, (Rev.Ed.)* § 447A. Of course, if the debtor has paid the debt, he is entitled to have the collateral returned.

A court in a state in which a debtor resides or is served with process may seize the debt because it has control of the debtor. It may after seizure transfer ownership of the debt from the nonresident creditor to some other party. This type of seizure is not uncommon, and the seizure order entered in such an *in rem* action is entitled to full faith and credit in the sense that such an order must be recognized by the courts of other states as a defense to a suit by the nonresident creditor against the original debtor to collect the debt. *Harris v. Balk, supra; Chicago, Rock Island, etc., Railway v. Sturm, supra.* Is such an order entitled to full faith and credit status in determining in some other state the rights of the nonresident creditor in the collateral held by him to secure such a debt? This would seem to be the crucial question and a question upon which neither counsel nor the court has unearthed any precise authority. The implications of this decision are necessarily far reaching because of the innumerable interstate transactions which involve the giving of collateral security.

I commence with the premise that in the absence of the clearest possible language our sequestration statute should not be construed to encompass the seizure of a debt if it appears that the courts of other states, in a suit by the debtor or by the purchaser of the debt against the nonresident collateral holder *to procure possession of the col-*

*lateral,*[3] will not be required to recognize the validity of an order of this court seizing the debt and the consequent right of the purchaser of the debt to be placed in the same position as an assignee of the creditor. I say this because a failure to recognize the seizure order as binding in other states might well subject the innocent debtor to a situation where he has paid the debt and still loses his collateral. Such a possibility should not be permitted unless the statute clearly requires it. See *Harris v. Balk, supra.*

Here the primary obligation is the debt, and while it is true that in case of default the nonresident creditor can only look to the collateral, nevertheless, periodic payments by the resident debtor are contemplated in the debt agreement evidenced by the nonnegotiable note. I cannot assume that these payments will not be made.

As stated, this State may, as it has, pass a statute authorizing the seizure of a debt where the court has jurisdiction of the debtor, and such seizure must be respected in actions by the nonresident creditor against the debtor. The Delaware statute also gives to the purchaser at the sequestrator's sale the same interest in the property as though "the defendant [Gotthilf] had transferred the same to the purchaser in accordance with Law." Consequently, it must be decided—despite plaintiff's contention that the seizure order does not purport to seize the collateral—whether the seizure and sale of the debt where there is collateral outside the State operates to place the purchaser in the position of the nonresident creditor with respect to such collateral. In my opinion the Delaware statute, by empowering the transfer of the debt, places the purchaser in the position where he succeeds to the rights of the nonresident creditor, and the crucial question is whether such an order is entitled to full faith and credit. The decision on this point would appear to involve not so much a matter of

---

[3] The same issue might well arise in other types of suits, e. g., defense to a suit to foreclose pledge.

formal logic as a question calling for a practical solution to a problem rendered difficult by intervening state lines. Compare *Estin v. Estin,* 334 *U.S.* 541, 68 *S.Ct.* 1213, 92 *L.Ed.* 1561, 1 *A.L.R.2d* 1412.

The decision as to the validity of this court's order construing our statute insofar as it may affect the nonresident creditor's rights in the collateral must ultimately rest with the United States Supreme Court. As I read the United States Supreme Court opinions, e. g., the *Sturm* and the *Balk* decisions, it seems clear that jurisdiction over the debtor gives the court the power to seize the debt. Since the rights of the nonresident creditor in the collateral stem exclusively from his rights in connection with the nonnegotiable note indebtedness—despite its unusual provisions —I believe this court by a seizure of the debt has the power under the United States Constitution to transfer to the person purchasing the debt at the sequestrator's sale the rights of the nonresident creditor in the collateral which secures such debt. The purchaser's rights therein would, however, be subject to the rights of other transferees from the nonresident creditor to the extent that such transferees could show that they were good faith purchasers for value without notice. See 2 *Williston on Contracts,* (*Rev.Ed.*) § 447A, and 1 *Restatement of the Law of Contracts,* § 171(2).

My conclusion would appear to be both a logical and a practical amplification of the principles announced in the *Sturm* and *Balk* cases. Such a conclusion tends to minimize the possibility that interstate transactions where collateral is involved are rendered less susceptible to seizure than those where no collateral is given. The drawing of a distinction between the two types of transactions, insofar as our sequestration statute is concerned, would seem not to be warranted. Moreover, with the surrounding safeguards here mentioned, the decision would work no injustice to innocent parties.

Gotthilf cites the United States Supreme Court case of

*Bank of Jasper v. First National Bank of Rome, Ga.,* 258 *U.S.* 112, 42 *S.Ct.* 202, 66 *L.Ed.* 490, as authority for the contention that in an action in New York to obtain the collateral the decision of this court would not be binding on the New York courts. That case only held, as I read it, that a debt may not be seized by the courts of a particular state, so as to be *res judicata,* if the debt is evidenced by a *negotiable* obligation held without that state and if there is no personal jurisdiction over the holder. Here the debt is evidenced by a nonnegotiable note. While the collateral is "negotiable", it does not constitute the evidence of the obligation which is being seized. My decision is entirely consistent with the concept of negotiability.

I construe our statute as authorizing the seizure of this debt and as empowering this court to transfer to the purchaser at the sequestrator's sale the principal debt with the ancillary right to require the delivery of the collateral by the nonresident creditor. I further conclude that such an order would be entitled to full faith and credit in an action in another state by the purchaser at the sequestrator's sale seeking to procure possession of the collateral. His rights would, however, be subject to the rights of *bona fide* purchasers without knowledge.

The possible necessity for the implementation of this court's order by a suit in another jurisdiction by the purchaser is no impediment to the seizure because such a possibility would exist even in a situation where a nonresident creditor refused to turn over the collateral to a resident debtor after the indebtedness had been voluntarily paid. The denial of a remedy on such a ground would seem to be without practical reason.

The fact that the seizure of the debt by this court's order might enhance the possibility that the nonresident creditor would dispose of the collateral is not believed to be sufficiently real to warrant the denial of relief under our statute. In the first place, if this court's order is entitled to full faith and credit, then any subsequent disposition of

the collateral by the nonresident creditor would be a wrongful act. It cannot be presumed that Gotthilf will act wrongfully. As heretofore indicated, the integrity of the Uniform Stock Transfer Act will not be impeached by this order because the rights of the purchaser at the sequestrator's sale would be inferior to those of a *bona fide* purchaser of the collateral for value and without notice. Moreover, the purchaser would have to obtain possession (or its equivalent) of such certificates. As shown, this would also be true if the creditor voluntarily assigned the debt and the assignee attempted to procure possession of the collateral from him. Consequently, there is no reason to conclude that the sequestration statute is unavailable because of the suggested difficulties presented.

Gotthilf says that because the debtor did not pledge his general credit, but only gave the creditor an action against the collateral in the event of default, the primary obligation is the collateral held by the nonresident. Such being the case, says Gotthilf, there is no property within this State and the seizure order is a nullity. I repeat, it cannot be assumed that under the terms of the principal obligation as evidenced by the nonnegotiable note no payments on account of the indebtedness will be made. Nor is this court entitled to assume that there will be a default. Consequently, it does not appear that the situation insofar as our problem is concerned is materially different merely because the general credit of the debtor is not pledged.

I now consider whether the sequestration order is adverse to the public policy of this State as disclosed by the Uniform Stock Transfer Act.

I feel that the contention that the sequestration order violates the Uniform Stock Transfer Act misconceives the purpose and function of the sequestration order. Nothing in the Uniform Stock Transfer Act prevents this court from seizing a debt even though the debt is secured by stock certificates issued pursuant to the provisions of the

Uniform Stock Transfer Act. This court, under the statute, transfers title to the debt to the purchaser at the sequestrator's sale. Since the transfer gives the purchaser all the rights to which he would have been entitled had the transfer been made by Gotthilf himself, it follows that the purchaser also receives the right to demand possession of the collateral by appropriate proceedings wherever the collateral can be found or personal jurisdiction obtained. The granting of such a right accords full recognition to the Uniform Stock Transfer Act because it recognizes the necessity for obtaining physical possession of the certificates (or other statutory equivalents) and it further recognizes that such right is subject to the rights of *bona fide* holders. This aspect of the situation would seem to be no different, in legal consequence, from the situation presented when the collateral is in the form of tangible property held by a non-resident creditor.

A plan of recapitalization adopted by Universal provides in part for the possible surrender of the note and the collateral held by Gotthilf in return for a designated number of shares of Universal's stock. Under the sequestration order, it was provided that in the event Gotthilf made the exchange the Universal stock was to be issued to the sequestrator. This does not, as Gotthilf contends, violate the Uniform Stock Transfer Act because this provision of the order only becomes operative when the note and the outstanding certificates are actually surrendered to Universal—a corporation which is under this court's jurisdiction. The function of this provision is not to effect a seizure under the statute. Its purpose was to permit Gotthilf to take advantage of the plan and also permit the sequestration without the necessity for plaintiff's giving a large bond. The seizure was not in violation of the public policy of this State as disclosed by the Uniform Stock Transfer Act.

We come finally to Gotthilf's contention that in a

derivative stockholder's suit a corporate debt cannot be sequestered because a party to a suit cannot sequester a debt due from himself.

Gotthilf, in support of his contention that self-sequestration is not permissible in Delaware, relies heavily upon the Superior Court decision of *Baugh & Sons Co. v. Crowell Corp.*, 4 *W. W. Harr.* (34 *Del.*) 231, 151 *A.* 718. I shall not pause to note the possible distinguishing features of this case except to point out that it decided that attachment was not permitted under the New York law.[4] It was not a sequestration case.

Gotthilf argues that although this is a stockholder's derivative action, the corporation should be considered as the real plaintiff since any recovery will be for its benefit. Gotthilf reasons from this that Universal is, therefore, as real plaintiff, sequestering a debt due from itself. Assuming without deciding that in this situation Universal should be treated as the plaintiff and further assuming that we are, therefore, dealing with a self-sequestration case, nevertheless, I feel that sequestration is here permissible. I reach this conclusion because of the substantial distinction which exists between attachments at law and seizures in equity under our so-called sequestration statute. As plaintiff points out, important procedural differences exist between an attachment at law and a sequestration in equity. The attachment eventuates in a judgment for plaintiff against the garnishee, while a sequestration results in a sale of the defendant's claim against the debtor. The so-called incongruity existing where a plaintiff at law is both a judgment creditor and a judgment debtor, if self-attachment is permitted, does not exist in the case of equitable self-sequestra-

---

[4] Plaintiff points out that apparently no argument was made to show the recognition of self-attachment in New York. Plaintiff argues that in fact self-attachment was then recognized in New York, citing *Wehle v. Conner*, 83 *N.Y.* 231. Apparently the authorities as to the right of self-attachment are divided. See *Verry v. Barnes*, 154 *Minn.* 252, 191 *N.W.* 589, 31 *A.L.R.* 711.

tion.  Self-sequestration under the mechanics of the Delaware statute is as effective to accomplish the so-called primary purpose of the sequestration statute, viz., to compel an appearance, as is sequestration against a nonparty.  The claim is seized and the sale made by the court's agent (sequestrator), and the same safeguards exist in favor of the nonresident whether the party sequestered is a party to the suit or a nonparty.

For the foregoing reasons, I conclude that there is no merit to the contention that self-sequestration is not permissible under Delaware statute.

In view of my conclusions the motion must be denied.

An order accordingly will be entered on notice.