EGBERT H. WOMACK *v.* JOHN DE WITT

(*November* 30, 1939.)

RODNEY and SPEAKMAN, J. J., sitting.

*Stewart Lynch* for plaintiff.

*Richards, Layton* and *Finger* for Continental Illinois National Bank and Trust Company and United Stockyards Corporation, intervening petitioners.

Superior Court for New Castle County, Foreign Attachment, No. 75, November Term, 1938.

SPEAKMAN, J., delivering the opinion of the Court:

The determination of this case involves the consideration of the following questions numbered 1 to 4, inclusive, as stated by the plaintiff, and the additional question numbered 5 for convenience raised by the intervening petition.

"(1)    Whether an intervenor, such as the Bank, is entitled to ask the Court to quash the return on a writ of attachment against the defendant, particularly when the defendant has not made any such request of the Court;

"(2)    Assuming that it is proper for the intervenor to take such a step, should the Court quash the return on the writ of attachment on the stock of the defendant, which the record shows is owned by the defendant and held by his agent for his benefit;

"(3)    Whether on the return [i. e. the issue raised by the pleas] of *nulla bona*, anything is due and owing by the corporation to the defendant John DeWitt; and

"(4)    Is the plaintiff entitled to have the corporation or the corporation's resident agent, file with the Sheriff a certificate setting forth the distinguishing marks or numbers on the shares of stock owned by DeWitt and registered in the name of David F. Hunt?

"(5)    Should the Court make an order that the corporation be permitted to comply with a demand of the bank for a transfer of the stock registered in the name of DeWitt, with a notation on the

stock records that the transfer is to the bank as pledgee and not absolutely, and that the interest or equity of the defendant, if any, in said stock, continue subject to the attachment?"

The plaintiff concedes that he in no way questions the rights of the intervenor Bank as pledgee of the stock, and he admits that such interest as he may have is junior to that of the Bank. He claims, however, that an intervenor should not be permitted any voice in an attachment proceeding except to have determined the position and priority of the intervenor's interests with respect to the rights of the attaching creditor.

In the case of *Banker's Mortgage Company v. Sohland*, 3 *W. W. Harr.* (33 *Del.*) 331, 138 *A.* 361, this Court permitted the pledgee of shares of stock which had been attached as the property of the defendant to intervene for the purpose of determining the pledgee's interest. The Court in its opinion said:

"For the prevention of the abuse of process, or, perhaps, more strictly speaking, for the prevention of circuity of action, and the delays and expenses arising therefrom, or as it is sometimes stated, on the ground of necessity, this right has, nevertheless, been recognized in this State, where the person seeking to intervene claims some right in or lien on the property attached." Citing *Steiff v. Bailey*, 4 *Boyce* (27 *Del.*) 508, 89 *A.* 366; *In re Gould*, 1 *W. W. Harr.* (31 *Del.*) 218, 113 *A.* 900.

In the case at bar the United Stockyards Corporation was permitted, without objection, to intervene. It has failed to show that any property rights or interest belonging to it have been or will be affected by the attachment, therefore, under the rule followed by the Courts of this State, it is not, in our opinion, entitled to resist any claim of the plaintiff.

As to the stock registered in the name of DeWitt, the plaintiff concedes that such rights as it has acquired by attachment are junior to the rights and interest of the Bank in the stock. By reason of this concession it is unnecessary to consider anything further with respect to its interest in such stock.

As to the stock registered in the name of Hunt the Bank claims that it should be permitted to assert the right of asking for the dissolution of the attachment to the extent of having such stock released therefrom.

The plaintiff, through the attachment proceedings, has caused stock to be attached in which he concedes the Bank has a substantial interest as pledgee. The Bank takes the position that the attachment is a nullity. If this is so, intervention should be permitted in order to make it unnecessary, in the event the plaintiff should proceed to judgment against the defendant and sale of the stock registered in the name of Hunt, for the Bank to resort either to equity for relief as was done in *Allen v. Stewart*, 7 *Del. Ch.* 287, 44 *A.* 786, or to other judicial proceedings. One of the most important and salutary purposes of intervention as stated in *Banker's Mortgage Company v. Sohland, supra,* is to prevent circuity of action and the delays and expenses arising therefrom.

We are of the opinion that under the facts as shown and the law as declared by the Courts of this State the Bank is entitled to be heard on its application to have the attachment dissolved as to the stock registered in the name of Hunt.

It is the contention of the Bank that the essential facts in the case of *Spoturno (Coty's Adm'r) v. Woods*, 8 *W. W. Harr.* (38 *Del.*) 378, 192 *A.* 689, 695, are identical with those in the case at bar, and that the essential holding of the Supreme Court was that equitable interests in stock cannot be attached in this State unless that interest appears upon the corporate books. On the other hand it is contended by the plaintiff that an examination of the opinion shows that it turned upon the fact that the record demonstrated that the corporation knew nothing of the beneficial holder of the stock which stood in the name of the nominee, and

he directs attention to the following language in the Court's opinion:

"The corporation knew nothing of the defendant, either as the owner of the stock or of any right or interest therein. Its certificate shows that Coty was a stranger in law to it. Its books told it nothing. It had no official information about him, his residence or whereabouts."

The plaintiff says that everything that was lacking on the question of knowledge in the Coty case is present in the case at bar; that it has been shown that the corporation knew DeWitt as the owner of its stock and of his interest in the Hunt stock; that its certificate told the Court in this case that DeWitt was not a stranger to it, that it had been advised of the facts of DeWitt's ownership, and that the corporation's books showed DeWitt's business address.

The distinction advanced by the plaintiff, as we understand it, between the instant case and the *Coty* case, is that in the instant case the corporation, at and before the time of this attachment, was in possession of certain information relating to the interest of DeWitt in the Hunt stock, which came to its knowledge from sources independent of the corporate books, and that DeWitt and his business address were well known to the corporation by reason of his registered stock ownership, while in the *Coty* case, the stock involved was registered in the name of the defendant nominee and the corporation certified that the defendant in the writ owned none of its stock, and by reason of this distinction the present plaintiff claims that the information thus obtained with respect to DeWitt and his interest in the Hunt stock inures to the benefit of the plaintiff.

In the *Coty* case the question for decision, as stated by the Supreme Court, was "whether the statute authorizing attachment of stock, or right or interest therein, as against one who is not registered as the owner thereof on the corporate books, is constitutional under the first section of the

*Fourteenth Amendment* of the *Federal Constitution* [*U. S. C. A.*] and the analogous provision found in the *Bill of Rights* of the *Constitution* of *Delaware* (*article* 1, § 7), the only notice to the defendant of the pendency of the suit being such as might go to him from the seizure, or constructive seizure of the stock, or right or interest therein, under the writ of attachment."

In the course of its opinion the Court said:

"As Coty, the defendant in the writ, was a stranger in law to the corporation, his so-called nominees were strangers to the process; and, as a voluntary or gratuitous notice, rendered at discretion or through favor, would amount to nothing even if the corporation knew where to inform Coty of what was afoot, and as jurisdiction was not attempted against the nominees, it seems clear enough that whatever notice the corporation might see fit to give the nominees would be, substantially, voluntarily and gratuitously given; for reasonable probability of communication of notice, based upon the relationship of the parties, is no stronger than the tie which may be supposed to bind them. Here, there was no tie at all between the defendant and the corporation so far as its books disclosed, and nothing was known of the relationship between the defendant and his alleged nominees except as alleged by the plaintiff."

With this state of facts before it, the Court said:

"To uphold the statute as constituting due process of law as applied to the species of property attached here, and in the circumstances existing, would mark it as one standing conspicuously apart in the field of execution as harsh, oppressive and dangerous in its operation. As applied to the facts of the case, it ignored those safeguards of notice to the defendant which are designed to afford a reasonable opportunity to appear and defend before judgment, and, therefore, due process of law was denied."

On the point under consideration an examination of the opinion of the Supreme Court in the *Coty* case will disclose that the ultimate conclusion of the Supreme Court was that the Statute in question was unconstitutional in so far as it purported to authorize the attachment of shares of stock, or the right or interest therein, of one of whom the corporate books were silent as to his ownership of the stock, or of any right or interest therein. Therefore, any knowledge relating to DeWitt's interest in the Hunt shares, obtained by the corporation from any source other than its

books, is immaterial. As to the Hunt stock it is apparent from the corporation's certificate and the evidence that it was not shown by the books that DeWitt had any interest therein at the time of the attachment.

The corporation's certificate shows that DeWitt, except as to the 2,208 shares of the Convertible No Par Value Preferred Stock, and 25 shares of the $1 Par Value Common Stock registered in his name and attached in these proceedings, did not appear on the books of the corporation to have any option to acquire shares of stock, or any right or interest in any shares of stock in the corporation.

From the uncontradicted testimony of Hunt, who was Secretary and Treasurer of the corporation at the time of the attachment, it appears that the books and records of the corporation do not show any notation or statement that the shares of stock in the corporation which were registered in his name actually belonged to DeWitt, and from the uncontradicted testimony of Charles J. Henkle, the Second Vice President of the Bank, it appears that the Bank is the Registrar of the preferred stock and the Transfer Agent of the common stock of the corporation; that he had seen and examined the Hunt stock certificates of the corporation, which are held by the Bank as collateral for the DeWitt loans, and that the certificates on their face do not have any notation that the shares which are registered in the name of Hunt belong to DeWitt.

The statement in the certificate of the corporation to the effect that it is advised that the Hunt shares are held for the benefit of DeWitt is apparently nothing more than a gratuitous or voluntary statement based on information obtained from some source other than the corporate books, and as a consequence is of no value in this case.

The purpose of the process of foreign attachment is to acquire jurisdiction of a defendant who does not reside

within the jurisdiction of the Court, by taking his property within the jurisdiction, and thereby compelling his appearance to the suit of his creditor. The seizure of the property of the defendant by the Sheriff, holds the property and places it in *custodia legis. Woolley Del. Prac., Secs.* 1270, 1271. By the seizure, the property becomes subject to a lien which remains, unless dissolved by security, as security *pro tanto* for the satisfaction of any personal judgment secured against a defendant who appears, *Rev. Code* 1935, § 4634, or until a judgment *quasi in rem* in default of an appearance is entered against the property attached. In the *Coty* case such a judgment for want of an appearance was entered. In the instant case the defendant has appeared but no judgment has as yet been entered. This distinction between the cases we do not consider important.

The situations created by the alleged seizures in the *Coty* case and in the case at Bar as to the Hunt stock are identical as of the respective times of seizures. What occurred thereafter is unimportant in this case. An effective seizure establishes a lien on the property taken and puts it in *custodia legis,* and thereby gives the Court jurisdiction either to enter a judgment *quasi in rem* in default of appearance, or to order its sale to satisfy any judgment in *personam* entered after appearance. In the *Coty* case the Court held that there was no attachment of any rights or interest in the stock registered in the names of Coty's nominees, consequently the purported judgment entered against the *res* was of no effect. Upon the authority of the *Coty* case, the inescapable conclusion is that there has been no effective taking by the Sheriff of the Hunt stock, or of any rights or interest therein, and it therefore necessarily follows that because there was no such taking, neither the Hunt stock nor any right or interest therein, are now in the custody of the law. This being so, the Court would be without jurisdiction to enter an order for the sale of such

stock, or interest therein, to satisfy any judgment in *personam,* in the event such a judgment should be entered against the defendant.

With the dissolution of the attachment of the Hunt stock, the application of the plaintiff for the issuance of a rule directing the corporation to file a certificate setting forth the numbers or other marks distinguishing the shares of said stock registered in the name of Hunt, falls.

██ We must now consider the right and title to dividends in the stock pledged to the Bank. The plaintiff has attached said dividends and the corporation, by its plea of *nulla bona,* contends that no title to said dividends existed in DeWitt at the time of the attachment.

The plaintiff apparently concedes the correctness of the rule stated in an annotation in 67 *A. L. R., page* 485, that:

"It is the general rule that the pledgee of stock is entitled to all dividends which accrue on the stock which he holds during the pendency of the pledge, and this is true although the pledgee has failed to procure registration on the books of the corporation. The pledgee not only has a right, but is in duty bound to collect the dividends on the stock, and apply them to the debt for which the stock is pledged, or to hold them as trustee for the pledgor." Citing 7 *R. C. L., Sec.* 268, *p.* 293, and numerous other authorities.

All dividends declared prior to October 15, 1938, on the stock in question were paid to the registered owners, but this has no relation to this proceeding except insofar as their payment shows a course of conduct on the part of the corporation, the Bank and the registered owners. The plaintiff contends that by the conduct of the parties there has been shown an agreement between the Bank and DeWitt under which DeWitt was given the right to the dividends on the stock both in Hunt's and DeWitt's names. He relies solely upon the facts that subsequent to the pledge of the stock, and prior to the dividend of October 15, 1938, all dividends on the DeWitt stock were paid

directly to DeWitt, and all dividends on the Hunt stock were paid to Hunt, and by him turned over to DeWitt, and from this he argues that there was a tacit or implied contract under which the dividends in question are subject to attachment as moneys or credits in the hands of the corporation belonging to DeWitt. We are unable to see how this can be so as to the dividends on the Hunt stock. Under no circumstances could such dividends be payable to any person other than Hunt as the registered holder, or the Bank as the pledgee, in the absence of some specific obligation on the part of the corporation, by contract or otherwise, requiring such a payment. In this case there is no showing that the corporation was under any such obligation.

The plaintiff stresses the fact that it was not until after the time of the attachment that any demand was made by the Bank for the payment to it of the dividends. In the absence of any evidence to the contrary, we must treat the demand as a claim of a right on the part of the Bank to the dividends, and particularly so because prior to the attachment DeWitt paid to the Bank the interest on his loan out of the dividends that came into his hands. We can arrive at no conclusion other than that the demand by the Bank was for the purpose of obtaining the dividends so as to apply them on account of DeWitt's indebtedness to the Bank. As pledgee of the stock it had this right, unless it was bound by contract to do otherwise. From the evidence we find no such contract.

The prayer of the Bank in the intervening petition that the Court make an order that the corporation be permitted to comply with a demand of the Bank for a transfer of the stock registered in the name of DeWitt, with a notation on the record that the transfer is to the Bank as pledgee and not absolutely, and that the interest or equity of the defendant, if any, in said stock, continue subject to

the attachment, will be dismissed, as we know of no principle of law under which we would feel justified in making such an order.

In accordance with this opinion

(1) That portion of the Sheriff's return which shows the attachment of shares of stock, or rights or interest therein, except the 2,208 shares of the Convertible No Par Value Stock of the corporation and 25 shares of the $1 Par Value Common Stock of the corporation registered in the name of DeWitt, will be quashed.

(2) Judgment will be entered in favor of the garnishee for costs.

(3) The petition of the plaintiff for the issuance of a rule directing the corporation, or its Resident Agent, to file a certificate setting forth the number or other marks distinguishing the shares of stock registered in the name of David F. Hunt will be dismissed.

(4) The petition of the intervenors that the corporation be permitted *inter alia* to comply with a demand of the Bank for a transfer of the stock registered in the name of DeWitt will be dismissed.