KAISER-FRAZER CORPORATION, a corporation of the State of Nevada, Plaintiff, v. CYRUS S. EATON and WILLIAM R. DALEY, Defendants.

*(September 21, 1953.)*

HERRMANN, J., sitting.

*S. Samuel Arsht* (of Morris, Steel, Nichols and Arsht) for Plaintiff.

*William Prickett* for Defendants.

Superior Court for New Castle County, No. 646, Civil Action, 1951.

HERRMANN, J.:

This is an action in tort for alleged wrongful inducement of breach of contract.

By its complaint, the plaintiff alleged that the defendants, without privilege to do so, induced and purposely caused First California Company and Otis & Co. to fail to perform a certain underwriting contract, dated February 3, 1948, which the plaintiff had with those companies. The plaintiff alleged that, in

order to furnish an excuse for such nonperformance, the defendants "plotted" and "procured the filing of an action" against the plaintiff and certain of its directors by one Masterson, a stockholder of the plaintiff corporation. The plaintiff alleged that by reason of the acts of the defendants, in inducing and causing First California Company and Otis & Co. not to perform their contract with the plaintiff, the plaintiff sustained damages in the amount of $2,588,919. It was further alleged in the complaint that on July 10, 1951, the plaintiff had been awarded a judgment against Otis & Co. in the sum of $2,588,919, together with interest and costs,[1] in the United States District Court for the Southern District of New York, the said judgment having been rendered against Otis & Co. for its breach of the underwriting contract of February 3, 1948, and for causing First California Company to breach that contract. A copy of the Order directing the entry of that judgment and of the District Court's findings of fact, conclusions of law and opinion were attached to the complaint and "by reference made a part" thereof.

This action was commenced on August 1, 1951. Since the defendants were not residents of Delaware, a writ of foreign attachment was issued. The defendants' stock in Otis & Co., a Delaware corporation, was attached and that corporation was summoned as garnishee. By its answer as garnishee, Otis & Co. declared that it was obligated to the defendants for cash and securities which the defendants had advanced to or deposited with it.

On December 6, 1951, the attorneys for the defendants filed applications for leave to appear specially for the defendants for the purpose of challenging the jurisdiction of the Court on the ground that the writ, the return and the attachment or garnishment were insufficient and ineffective. Simultaneously, alternate motions were made on behalf of the defendants for leave to appear specially to defend the action on its merits with liability limited to the value of the property of the defendants validly

---

[1] The New York judgment was actually in the amount of $3,120,743.51.

attached or garnished. The jurisdiction of the Court was sustained, after leave to appear specially to challenge jurisdiction had been granted, and the Court denied leave to appear specially to defend on the merits with limited liability. See 7 *Terry* 509, 85 *A.* 2d 752.

A judgment *nisi* for want of general appearances was entered for the plaintiff on December 27, 1951 and, because the defendants did not thereafter enter general appearances, the judgment became absolute on January 7, 1952. On the same date, the plaintiff moved that a judgment *in personam* be entered in its favor against the defendants on the ground that their activities in the proceedings to that time constituted general appearances. That motion was denied and the default judgment *in rem* was entered.

On January 25, 1952, the plaintiff moved the Court to adjudge that the defendants' actions, before and after the entry of the default judgment, constituted or resulted in general appearances. The defendants contested the motion under special appearances. As late as March 14, 1952, during the argument on that motion, the plaintiff urged the defendants to enter general appearances and to defend on the merits of the case, but the defendants declined. On March 15, 1952, the plaintiff's motion was denied.

On April 1, 1952, an inquisition by jury was had upon the default judgment and the jury ascertained the amount of the plaintiff's damages to be $3,232,329. A judgment in that amount was entered in favor of the plaintiff.

While the proceedings were thus being carried on here in Delaware, Otis & Co. had appealed to the Circuit Court of Appeals the judgment which had been entered against it in the plaintiff's favor in the United States District Court for the Southern District of New York. On April 7, 1952, the Circuit Court of Appeals reversed that judgment, *Kaiser-Frazer Corp. v. Otis & Co.*, 2 *Cir.*, 195 *F.* 2d 838, holding that the underwriting agreement of February 3, 1948 was unenforceable because,

by reason of misrepresentations in the accompanying prospectus, the agreement violated the laws of the United States, the Securities Act of 1933, 15 *U. S. C. A.* § 77a *et seq.*, and contravened the public policy expressed in those laws. The Court held that, the contract being unenforceable, the plaintiff was not entitled to recover damages from Otis & Co. for breach thereof and that Otis & Co was not liable in damages for interfering with the performance of the contract by First California Company.

On April 8, 1952, in execution of the judgment entered herein on April 1, 1952, the plaintiff moved this Court for an Order of Sale of the attached stock of the defendants. An Order of Sale was entered on April 21, 1952. On April 25, 1952, the defendants filed the motions and petitions,[2] now before the Court, in which this Court was asked to grant the following relief: (1) That the plaintiff's judgment and the Order of Sale be vacated and judgment be entered for the defendants; or (2) that the plaintiff's judgment be opened, the defendants be permitted to enter general appearances and be let in to trial, and the Order of Sale be vacated; or (3) that the Order of Sale be stayed until termination of proceedings in the United States Supreme Court regarding the New York action, or until disposition of the defendants' instant motions.

The sale of the attached stock and any further proceedings to enforce the judgment entered herein were stayed on May 1, 1952, and further proceedings upon the defendants' motions of April 25, 1952 were deferred until further order of this Court.

On October 20, 1952, the United States Supreme Court denied the plaintiff's petition for *certiorari* in the New York action, 344 *U. S.* 856, 73 *S. Ct.* 89, and on October 21, 1952, the defendants moved this Court to proceed to dispose of those prayers for relief in their motions of April 25, 1952, which had not been disposed of by the Order of May 1, 1952. The matter

---

[2]Hereafter, the various applications of the defendants will be referred to as "motions" in order to conform to 10 *Del. C.* § 3531.

is now before the Court on the defendants' motions, affidavits in support thereof, and the plaintiff's answer thereto.

In their motions, the defendants assert *inter alia* that, as a result of the decision of the Circuit Court of Appeals in the New York case, the plaintiff is estopped in this action to deny that its contract with Otis & Co. was illegal and unenforceable. They allege that, since the judgment in the case at bar was in effect based upon the reversed judgment in the New York action, it is no longer equitable that the judgment herein should have prospective application. The defendants assert that they should be relieved of a judgment that would enable the plaintiff to recover for damages for the alleged procurement of the breach of a contract which has been held to be illegal and unenforceable. The defendants say they have a meritorious defense to the instant action as shown by proposed answers filed with the motions. The proposed answers make general denial of the allegations of the complaint and, *inter alia*, plead the findings and conclusions of the Circuit Court of Appeals in the New York action.

The plaintiff's answer to the pending motions asserts, in substance, that the judgment entered herein was not based upon the reversed New York judgment; that the defendants had actual knowledge of the pendency and nature of this action from the date of its commencement on August 1, 1951; that the defendants' default was wilful, intentional and deliberate, was made with full knowledge of all relevant facts and circumstances, and was the result of the defendants' conscious election to default and permit an *in rem* judgment to be entered, collectable only out of the property attached or garnished, rather than to submit themselves to the possibility of an *in personam* judgment. The plaintiff asserts that the defendants knowingly "took a calculated risk" and "gambled" the property that was validly attached or garnished and that they are now estopped from contending that they should be relieved from the consequences of a judgment which they knowingly and deliberately elected to have entered against their attached property. It is asserted by

the plaintiff that there is no privity between the defendants in this action and the defendant in the New York action and that the judgment of the Circuit Court of Appeals in the New York action does not operate as an estoppel against the plaintiff in this action.

The defendants' applications are in the alternative. The motions to vacate the judgment for the plaintiff and to enter judgment for the defendants were made under Civil Rules 55 (c) and 60(b), *Del. C. Ann.* The alternative motions to open the judgment and to let the defendants in to trial were made under *Code* 1935, § 4634, which, with minor revisions not here pertinent, now appears at 10 *Del. C.* § 3531.[3]

The motions to vacate the judgment for the plaintiff and to enter judgment for the defendants could be granted only (1)

---

[3]10 *Del. C.* § 3531 provides:

"The writ of foreign attachment shall be framed, directed, executed, and returned, and like proceedings had, as in case of domestic attachment, except that an appearance may be entered for the defendant in the manner provided in this section and defense made without entry of security for the discharge of such attachment at any time before the execution of the order of sale or the writ of *fieri facias, capias ad satisfaciendum* or otherwise, as provided in this section. Appearance may be entered at any time before the expiration of the second term after the issuance of the writ of foreign attachment in the same manner as appearances are entered in cases commenced by summons. After the expiration of the second term after the issuance of the writ of foreign attachment, no such appearance may be entered except upon notice and after an order entered upon a motion to the court showing good cause therefor, and the court or judge may impose such terms as it deems proper, and any judgment which may have been entered upon any such suit shall, upon the entry of such appearance, be opened and the defendant let in to a trial. In all cases where the defendant has appeared, like proceedings shall be had as in cases begun by summons, provided that the lien upon the property seized under the writ of foreign attachment shall in no respect be disturbed or affected by the entry of such an appearance, defense and proceedings thereupon as provided in this section, but shall remain as security *pro tanto* for the satisfaction of any personal judgment secured against a defendant so entering an appearance, for every plaintiff in a foreign attachment shall have the benefit of his own discovery, and after judgment may proceed by order of sale, *fieri facias, capias ad satisfaciendum,* or otherwise, as on other judgments. In actions begun by foreign attachment there shall be no appointment of auditors for distribution among creditors. In case no appearance has been entered in the cause, as provided in this section, the plaintiff, before receiving any sum under his judgment in foreign attachment, shall enter into recognizances, as required by section 3527 of this title."

if the Court were prepared to rule upon the present record that, by reason of the holding of the Circuit Court of Appeals in the New York action, the underwriting agreement is illegal or the plaintiff is estopped to deny its illegality; or (2) if the judgment in this case was "based" upon the reversed judgment in the New York action. See Civil Rule 60(b) (5).

Neither of these two situations is the case. The issues of the applicability of the doctrine of collateral estoppel, and of the effect upon this case of the ruling of the Circuit Court of Appeals in the New York action, have not been briefed or argued and are not before the Court for decision. The problem before the Court is the preliminary question of whether the defendants now should be permitted to come in and interpose those issues in defense of this action. As to the second possibility, it is clear, I think, that the default judgment in this case is not "based" upon the reversed judgment in the New York action. The defendants concede that "technically" the judgment here is not "based" upon the reversed New York judgment but, relying upon *Block v. Thousandfriend,* 2 *Cir.,* 170 *F.* 2d 428, they urge an interpretation of Rule 60(b) (5) liberal enough to include the situation now before the Court. I do not agree that the scope of Civil Rule 60(b) (5) should be thus enlarged by interpretation.

Accordingly, the motions to vacate the judgment for the plaintiff and to enter judgment for the defendants will be denied.

As to the applications that the judgment be opened and the defendants permitted to appear and defend on the merits, the defendants contend that Civil Rule 60(b) and 10 *Del. C.* § 3531 furnish concurrent remedies and that they are entitled to relief by reason of one or the other of such remedies. The plaintiff contends that Civil Rule 60(b) is not applicable to a default judgment in an action commenced by foreign attachment and that, if the defendants are entitled to relief, it must be had under the Statute. It is clear that the Statute would be applicable

in a proper case because Civil Rule 60(b) expressly recognizes the continued power of the Court "to grant any relief provided by statute." If the judgment should be opened, and if such relief may be properly granted under the Statute, then I think the statutory remedy should be invoked because the Statute makes provision for the protection of lien rights and for other matters of procedure peculiar to proceedings in cases begun by foreign attachment.

Accordingly, consideration will be given first to the question of whether the defendants should have relief under 10 *Del. C.* § 3531.

The Statute provides that a defaulting defendant may enter an appearance and be let in to trial upon a motion showing "good cause" therefor. The first question for decision, then, is whether the defendants' motions show "good cause", within the meaning of that term as it is used in the Statute, for opening the default judgment and for permitting the defendants to appear and defend the action on its merits. The Court is called upon to construe the Statute and to arrive at a conclusion as to what the Legislature meant when it adopted the words "good cause". Tracing the evolution of the Statute is of some aid in the task.

The present Statute grew out of *Code* 1915, § 4145 which provided, generally speaking, that the writ of foreign attachment be framed, executed and returned, and subsequent proceedings be had, as in cases of domestic attachment. This Statute had remained unchanged for many years. See *Code* 1852, § 2291. Other pertinent statutes provided that the writ of foreign attachment contain an endorsement by the plaintiff or his attorney of the amount of bail to be taken, *Code* 1915, § 4144, 10 *Del. C.* § 3508; that the plaintiff be given judgment the second term after issuing the writ unless such special bail be entered by the defendant, *Code* 1915, § 4137, 10 *Del. C.* § 3526; that the defendant might dissolve the attachment by giving security to the value of the property attached, *Code* 1915, § 4123,

10 *Del. C.* § 3515; and that before receiving any sum under his judgment, the plaintiff be obliged to enter into a recognizance with surety to secure the repayment thereof if the defendant should appear within one year and disprove or avoid the debt. *Code* 1915, § 4135, 10 *Del. C.* § 3527. Except for the implication in *Code* 1915, § 4135, the statutes made no provision for opening a default judgment and the "good cause" term nowhere appeared.

As a result of *Morgan v. Ownbey*, 1916, 6 *Boyce* 379, 100 *A.* 411, it was realized that the requirement of bail or security, as a prerequisite to appearance by an individual defendant, could cause undue hardship and a miscarriage of justice. Consequently, *Code* 1915, § 4145, was amended in 1917 by 29 *Del. Laws*, Ch. 258. It is apparent that this Amendment was adopted in order to alleviate the particular hardship found to exist in the *Morgan* case. The Amendment of 1917 provided that a defendant might appear before default judgment without security and that, in any case commenced between 1915 and 1918, a defendant might appear without security after default judgment and at any time before execution thereon. The right to appear after default judgment was unqualified as to cases begun between 1915 and 1918, but there was no provision for appearance after default judgment in other cases.

The term "good cause" made its first appearance in the statutes under consideration when *Code* 1915, § 4145 was again amended in 1923 by 33 *Del. Laws*, Ch. 232. That Amendment provided for appearance by a defendant without security, at any time before execution upon the judgment, upon the granting of the petition of the defendant "showing good cause therefor". This Statute contemplated appearance by a defendant at any time before execution and it made no distinction between an appearance before default and an appearance afterwards. It is clear, I think, that the Legislature was again concerned solely with the problem of bail or security. This Amendment simply authorized the Court to eliminate the requirement of security, at any time prior to execution, if the defendant's petition showed

"good cause" for permitting him to appear without security. The term "good cause", as used there, related to the question of whether the defendant should be permitted to appear without bail and not to the general question of whether the defendant should be permitted to appear after a default judgment.

*Code* 1915, § 4145, was amended for the last time by 37 *Del. Laws,* Ch. 266. That Amendment gave the Statute its present form as it appeared in *Code* 1935, § 4634 and as it now appears, with slight variation, in 10 *Del. C.* § 3531.

The history of the Statute furnishes no clear indication of legislative intent as to the scope and meaning of the words "good cause". One factor is plain, however. The effect of the case of *Morgan v. Ownbey, supra,* upon the evolution of the Statute is unquestionable. It seems to me that by the present Statute, after two earlier unsuccessful attempts, the Legislature finally succeeded in granting to the courts that flexible, unrestricted power over judgments in foreign attachment cases for which the Court so wistfully yearned in the *Morgan* case. I am of the opinion that the statutory authorization to permit an appearance and defense after default judgment, upon a showing of "good cause", is simply a restatement of the court's inherent, common law power to open a default judgment if, as was stated in the *Morgan* case, the court is "convinced that it would be in furtherance of justice to do so." [6 *Boyce* 379, 100 *A.* 434.] I find nothing to indicate that the Legislature intended to modify or limit the inherent, plenary power of the court over its judgments and, in the absence of clear evidence, I shall not assume that it intended to do so.

It is held, therefore, that "good cause" is shown for the opening of a default judgment, under 10 *Del. C.* § 3531, when the showing is sufficient to convince the court that it would be in furtherance of justice to permit the defendant to appear and interpose a defense to the action.

The plaintiff contends, however, that it is not in furtherance of justice to permit a defendant to appear and defend,

after default judgment for want of appearance, if the defendant had adequate knowledge of the pendency of the action and if he "wilfully, intentionally and deliberately elected to default." The plaintiff makes two basic arguments in support of this contention.

First, the plaintiff argues that the Court in Banc so held in *Morgan v. Ownbey, supra.* The *Morgan* case involved a defendant who was unable to furnish the bail which was then required for appearance by a defendant in a case begun by foreign attachment. The defendant in the cited case had attempted to appear and defend without bail before default judgment was entered against him. The Court held that, under the Statute then prevailing, there could be no appearance by a defendant without security in a case begun by foreign attachment. The defendant tried again after default judgment *nisi* was entered but again the Court ruled that appearance without security was impossible. Again, after final judgment, the defendant moved to open the judgment and sought to appear and defend without bail. The Court expressed its sympathy for the hardship imposed under the circumstances but ruled that, under the existing Statute, it was unable to grant relief. The Court recognized the inherent power of courts of general jurisdiction over their judgments, but reluctantly ruled that inability to furnish the bail required by the Statute was not a sufficient reason for failure to appear and that, under the Statute, the Court was no more able after default judgment than before default judgment to permit an appearance and defense without security.

The Court's ultimate ruling in the *Morgan* case was that inability to furnish security was not sufficient reason to justify the opening of the default judgment. I do not agree that the *Morgan* case stands for the general proposition that, in the exercise of its inherent power over its judgments, the Court will never find it to be in furtherance of justice to open a default judgment and permit an appearance by a defendant if he had adequate notice of the pendency of the suit and knowingly permitted the default judgment to be entered.

As another argument in support of its contention that "good cause" for opening a default judgment in a foreign attachment case cannot be shown if the defendant knowingly permitted the default, the plaintiff points to *Code* 1935, § 4580. That Statute governed the opening of default judgments under certain circumstances in actions commenced by summons. It provided that lack of notice or knowledge of the suit was prerequisite to the right to have a default judgment taken off. The plaintiff asserts that *Code* 1935, § 4580 was in existence when the "good cause" phrase was adopted in the present foreign attachment law and that, therefore, the Legislature must have intended to conform the prerequisites for opening default judgments in the two types of actions so that lack of notice of the suit would be essential in either type of case.

It has been held that the Statute appearing at *Code* 1935, §4580 did not apply to all summons cases but only to those in which the Sheriff's return erroneously showed service of summons upon the defendant. At the time of the adoption of the "good cause" phrase with which we are here concerned, the general rule in summons cases in this State was the ancient common law rule that a default judgment for want of an appearance would be taken off when the application for that purpose was made without unreasonable delay, and when the court was satisfied (1) that the failure to appear was not due to gross carelessness, and (2) that the defendant had a meritorious defense to the whole or some part of the action. In summons cases, generally, lack of notice or knowledge of the action was not a prerequisite to relief from a default judgment. *Brown v. Philadelphia, W. & B. R. Co., C. C. Del.* 1881, 9 *F.* 183; *Yerkes v Dangle,* 3 *Terry* 362, 33 *A.* 2d 406.

In view of the limited scope of *Code* 1935, § 4580, I find untenable the plaintiff's contention that, when it adopted the "good cause" phrase, the Legislature intended to incorporate the notice requirement of that Statute. If it had so intended, it would have been easy for the Legislature to have made reference to that Statute or to have copied its provisions.

The plaintiff cites cases of other jurisdictions in support of its contention that the defendants should not be relieved of the default judgment because they wilfully and deliberately elected to default. It would unduly prolong this opinion to attempt to discuss each such case. It is sufficient to point out that no cited case was a foreign attachment case governed by a Statute similar to ours.

In connection with this entire problem, it must be remembered that, under the law of this State, a primary purpose of foreign attachment is to obtain the defendant's appearance. *John R. Hitchens, Inc., v. Phillips Packing Co., Inc.*, 3 *Terry* 393, 35 *A*. 2d 502, 505. Any construction of the Statute governing foreign attachments must be made in the light of that fundamental objective. Equally significant is the ancient provision of our foreign attachment law recognizing the right of a defaulting defendant to appear at any time within one year after execution upon the default judgment and disprove or avoid the debt. I *Del. Laws*, p. 468, *Code* 1915, § 4135, *Code* 1935, § 4623, 10 *Del. C.* § 3527. This "right" seems to be unqualified. It is not discretionary, it is not premised upon lack of notice of the action, and it is not withheld from a defendant whose default was deliberate. *Sirman v. Moore*, 5 *Boyce* 374, 93 *A*. 666; *Morgan v. Ownbey*, 2 *W. W. Harr.* 437, 125 *A*. 418. I find no logical reason for holding that a defaulting defendant should be deprived of relief prior to execution because his default was wilful but that he may interpose a defense at any time within one year after execution without regard for the element of notice or wilfulness of default.

A statute which provides for the opening of a default judgment should be liberally construed because sound public policy favors the determination of actions on their merits. *Riskin v. Towers*, 24 *Cal.* 2d 274, 148 *P.* 2d 611, 153 *A. L. R.* 442. It is held that "good cause" may be shown for the opening of a default judgment, under 10 *Del. C.* § 3531, notwithstanding the fact that the defendant had knowledge of the suit from its in-

ception and knowingly and wilfully permitted the default judgment to be entered.

Having rejected the plaintiff's contention that the defendants are necessarily barred from relief under the Statute because of their wilful and deliberate default, there remains the ultimate question: Under all of the circumstances of this case, would it be in furtherance of justice to open the default judgment and to permit the defendants to interpose a defense to the action? I think this question must be answered in the affirmative.

The motions to open the default judgment and allow the defendants to appear and defend are addressed to the sound discretion of the Court. The proceeding is essentially equitable in nature, ruled by equitable principles, and the appeal is to the conscience of the Court. *Chandler v. Miles,* 8 *W. W. Harr.* 431, 449, 193 *A.* 576; *Britton v. Continental Mining & Smelting Corp.,* 366 *Pa.* 82, 76 *A.* 2d 625. In the exercise of that discretion, real doubts are usually resolved in favor of the application to open the default judgment because the law favors the disposition of cases on their merits. See 31 *Am. Jur., Judgments,* § 717; 49 *C. J. S., Judgments,* § 337, page 677.

Affidavits, filed in support of the instant motions, represent that the defendants were advised by counsel that, so long as the judgment of the lower Court in the New York action remained in force and effect, including the findings of that Court that the defendants herein had inspired the *Masterson* suit and thereby induced First California Company to breach the underwriting agreement, the defendants could not successfully defend this action upon the merits because they would be precluded by the doctrine of collateral estoppel. The affidavits state that it was for this reason that the defendants failed to enter general appearances in this cause and to expose themselves to an *in personam* judgment prior to the entry of the default judgment.

There is room for doubt as to whether the reason stated is an adequate excuse for the failure of the defendants to enter appearances in this cause before the date on which the Court was obliged by the Statute to permit the entry of the default judgment. It may be that courage of conviction should have led the defendants to enter their appearances in this cause and, then, to seek a stay of these proceedings pending the outcome of the appeal in the New York case. I think, however, that the doubt must be resolved in favor of the defendants.

As a practical matter, I can appreciate the legal dilemma in which the defendants and their attorneys found themselves when they were obliged to make their decision regarding the entry of general appearances in this case. The strategy of the plaintiff throughout these proceedings acknowledges that dilemma. The findings of fact, conclusions of law and the judgment of the lower Court in the New York action were pleaded in full by the plaintiff in its complaint. Until the New York judgment was reversed, the plaintiff was making every effort to induce the defendants to enter general apperances, or to have them adjudged to be in Court under general appearances, so that any judgment entered in favor of the plaintiff would be an *in personam* judgment against the defendants. The defendants, on their part, resisted all such efforts until the reversal of the New York judgment reversed the field here. Immediately upon the reversal of the New York judgment, the defendants here suddenly offered the general appearances which they had theretofore so strenuously resisted and the plaintiff suddenly lost interest in having the general appearances which it had theretofore so earnestly sought. This change in the posture of the parties, coincidental with the change in the status of the New York case, demonstrates the importance of the New York judgment in the legal thinking of all parties.

In view of the unusual sequence of events in this case, I have concluded that justice requires that the Court accept the defendants' reasons as a sufficient explanation to excuse their

failure to appear in this cause before the entry of the default judgment.

The defendants assert that a complete defense to this action, not available to them prior to the entry of the default judgment, became available thereafter as a result of the decision of the Circuit Court of Appeals in the New York action. They assert that, under the doctrine of collateral estoppel, the conclusions of the Circuit Court of Appeals would have barred a judgment for the plaintiff in this case if those conclusions had been announced by the Court in time to be interposed as a defense in this cause. Since the judgment herein was entered before the Circuit Court of Appeals announced its decision, the defendants say that the defense of collateral estoppel, now available to them, was not available at the time of the entry of the default judgment.

If, by reason of the decision of the Circuit Court of Appeals, the plaintiff would be estopped to deny that the underwriting agreement was illegal and unenforceable, the defendants now have a meritorious defense to this action which they did not have when the default judgment was entered. Without intending to express any opinion as to the applicability or effect of the principle of collateral estoppel under the circumstances of this case, I am convinced that there is sufficient merit to the defendants' assertions to justify affording to them the opportunity to plead the judgment of the Circuit Court of Appeals and to have this Court determine the effect of that judgment as a defense in this case. This cannot be accomplished unless the defendants are permitted to appear and properly raise and present the defense for determination by the Court.

It has long been the rule that courts will open a default judgment in a proper case if a defense arises after the entry of the judgment which was not available to the defendant prior thereto. See *Cardesa v. Humes, 5 Serg. & R., Pa.,* 65, 68. For the same reasons of justice which support that rule, the ancient remedy of *audita querela* was conceived to permit the

presentation of a defense which was in existence prior to, but not as a practical matter available before, the entry of judgment. 5 *Am. Jur., Audita Querela,* § 2.

No intervening rights or equities arose in this case between the entry of the judgment and the making of the motions to open it. The applications to open the judgment were made diligently and seasonably. The plaintiff has not shown harm or prejudice arising from delay.

I am of the opinion that to open the judgment and to permit the defendants to defend would protect the rights of the defendants without unduly prejudicing the rights of the plaintiff. I am convinced that sufficient reason has been shown to justify opening the judgment and that it would be in furtherance of justice to do so.

In view of the foregoing, it is unnecessary to decide whether the defendants are entitled to have the judgment opened under Rule 60(b).

The Order of Sale will be vacated, the judgment will be opened and the defendants will be permitted to appear and defend.