**FIRST WESTERN FINANCIAL CORPORA-TION, a Delaware corporation, Plaintiff,**

v.

**Albert G. NEUMEYER and Clifford A. Jones, Defendants.**

Superior Court of Delaware.

New Castle.

March 21, 1968.

Richard L. McMahon of Potter, Anderson & Corroon, Wilmington, for plaintiff.

Harvey S. Kronfeld, Philadelphia, Pa., for defendants.

STIFTEL, President Judge.

First Western Financial Corporation ("First Western"), a Delaware corpora-

tion, sued defendants Neumeyer and Jones to recover corporate funds in the amount of $14,000 allegedly diverted by defendants. The defendants, nonresidents of Delaware, were substantial stockholders of First Western as well as officers and directors. Because the defendants had property within the jurisdiction subject to attachment and were also nonresidents, First Western sought a writ of foreign attachment under 10 Del.C. § 3506. Under Superior Court Rule 4(B) (6), First Western secured from the Court an order directing the issuance of the writ, ordering the plaintiff corporation to hold the defendants' stock subject to its order, and directing it to file a certificate in ten days indicating the stock was held pursuant to the order. The stock was seized by the sheriff under such order.

The defendants duly received notice of the attachment, and have moved to dismiss the writ. Defendants contend that a corporation may not maintain a foreign attachment action by having its shares of stock in its own hands seized as garnishee. The plaintiff disputes this contention, and thus raises the sole issue for decision: Whether a Delaware corporation can attach shares issued by itself, under its control, and owned by defendant stockholders. The Court holds it can.

■ In support of their motion, the defendants first argue that the attachment provisions, 10 Del.C. § 3506 and 10 Del.C. § 3509, and Superior Court Rules preclude plaintiff from invoking the attachment procedure against stock of the defendants which is in plaintiff's control.

None of the above provisions is addressed to this issue. 10 Del.C. § 3506 authorizes a writ of foreign attachment against an individual not an inhabitant of Delaware on any cause of action upon satisfactory proof that the defendant (a) cannot be found, (b) resides out of State and (c) that the plaintiff has a good cause of action against the defendant in a sum exceeding $50. 10 Del.C. § 3509 provides that a gar-nishee who, after being duly summoned, does not appear, may be compelled, by attachment, to appear and answer or plead. Consequently, none of the statutory provisions dealing with attachment prohibit the remedy sought by plaintiff.

Defendants also argue that a reading of Rule 4 indicates the drafters' intent to prohibit the plaintiff from attaching a defendant's shares in the plaintiff's custody, because of the anomalous procedure that would be involved. For example, Rule 4(B) (6) requires the plaintiff to:

"Obtain from the Court an order, a certified copy of which shall be served with the writ, upon the person, persons or corporation having possession or custody of the property or control of its transfer, directing such person, persons or corporations to:

(A) retain the property and recognize no transfer thereof until further order of the Court;

(B) forthwith make a notation upon any records pertaining to the property that such property is held pursuant to the order of the Court; and

(C) within ten days after the date of such service, file a certificate under oath with the Prothonotary, specifying:

(I) such defendant's property, if any, of which it has possession, custody, or control, or control of its transfer;

(II) whether the title or interest of each such defendant is legal or beneficial; and

(III) if legal, the name and address of the holder of any equitable or beneficial title or interest therein, if known, and if beneficial, the name and address of the holder of the legal title thereto, if known."

Under this Rule, a plaintiff who seeks to attach property in his own hands would be

required to obtain a court order to be served upon himself, and thereby direct himself to retain the property, note upon his own records that the property is held pursuant to court order, et cetera. Defendants insist that such a procedure is so pointless that the drafters could not have intended it; and that therefore attachment by a corporation in control or custody of property sought to be seized is precluded by the Court Rule.

Although a procedure requiring a party to obtain an order to be served upon itself and directing itself to perform certain acts, is somewhat formalistic, such procedure is not necessarily pointless or anomalous, in view of the end served thereby. The purpose of the Rule 4(B) (6) procedure is to transfer custody and supervision of defendant's property to the Court. See Womack v. De Witt, 1 Terry 304, 10 A.2d 504 (Super.Ct. 1940). This purpose is served equally well whether the garnishee is a third party or a third party plaintiff.

Nor is Rule 4(B) (6) an isolated example of a seemingly formalistic procedure requiring a party to obtain a court order requiring himself to perform certain acts culminating in the transfer of property to *custodia legis*. This is also done in Chancery by sequestration proceedings in derivative suits; see 10 Del.C. § 366; Weinress v. Bland, 31 Del.Ch. 269, 71 A.2d 59 (Ch. 1950); Chancery Rule 4(dd), with a result similar in effect to the result in attachment proceedings. For the above reasons, it is also fair to conclude that the Superior Court Rules do not prohibit plaintiff's attachment of its issued stock owned by defendants.

The defendants next contend that a procedure which permits a plaintiff to attach a defendant's property in the plaintiff's hands would permit abuses. Under Court Rule 4, a plaintiff must file an affidavit containing the defendant's last known address. It is argued that a plaintiff, by virtue of being an interested party, would have less incentive correctly to ascertain a defendant's last known address than would a third person who is garnishee; and as a result, defendant would be less likely to obtain notice of the attachment proceeding.

However, no remedy can be disallowed upon an unsupported assumption that a plaintiff, by bad faith or fraud, will abuse it. Moreover, an argument based upon lack of notice is inapposite where, as here, the defendants are duly notified.

Just as the statutory and rule provisions governing attachment do not preclude the remedy sought after here, neither does sound policy.

The purpose of the attachment proceeding is to coerce a nonresident who owns property within the State to submit himself to personal jurisdiction upon pain of forfeiture of his seized property and to provide security for the enforcement of any judgment that the plaintiff may obtain against the defendant. See United Indus. Corp. v. Nuclear Corp. of America, 237 F. Supp. 971 (D.C.Del., 1964); Kaiser Fraser v. Eaton, 9 Terry 236, 101 A.2d 345 (Super. Ct. 1954); Chrysler Corp. v. Dann, 3 Storey 430, 171 A.2d 223 (Super.Ct. 1961). These policies are served by permitting a plaintiff to use the court process to seize property of a nonresident defendant. To disallow the attachment remedy to a plaintiff which has control of the property disadvantages such a plaintiff for no justifiable statutory or policy reason.

Delaware policy does not look with disfavor upon a plaintiff's proceeding against property of a defendant in the plaintiff's custody. On the contrary, at least two similar situations illustrate the approval of such a procedure.

An analogous case is where a plaintiff stakeholder files a bill in the nature of interpleader with respect to property which he has deposited into Court, and then asserts his own claim against such property. The Federal Rules of Civil Procedure, adopted

in Delaware almost *in toto*, allow a stakeholder to assert his own claim against property formerly in his custody. See General American Life Insurance Co. v. Floom, 96 F.Supp. 488 (D.C.Pa., 1955); Walmac v. Isaacs, 220 F.2d 108 (C.A. 1, 1955).

A second analogous situation is where a corporation sequesters stock in its own control or custody in derivative suits in Chancery. See Weinress v. Bland, 31 Del.Ch. 269, 71 A.2d 59 (Ch. 1950). The analogy to sequestration is appropriate because the purposes of attachment and sequestration proceedings are the same; see Loft, Inc. v. Guth, 25 Del.Ch. 363, 19 A.2d 271 (Ch. 1941); Kaiser Fraser Corp. v. Eaton, supra; and the proceedings involved in both cases are similar. See 10 Del.C. § 366, 10 Del.C. § 3506; Superior Court Rule 4, Chancery Court Rule 4. The policy expressed by the allowance in Chancery of the remedy sought here should be followed in an attachment proceeding.

It is relevant, however, to note language in the *Bland* case which appears to suggest a different result in attachment proceedings. In 71 A.2d at 69, the Chancellor observed that:

"[I]mportant procedural differences exist between an attachment at law and a sequestration in equity. The attachment eventuates in a judgment for plaintiff against the garnishee, while a sequestration results in the sale of the defendant's claim against the debtor. The so-called incongruity existing where a plaintiff at law is both a judgment creditor and a judgment debtor if self-attachment is permitted, does not exist in the case of equitable self-sequestration. Self-sequestration under the mechanics of the Delaware statute is as effective to accomplish the so-called primary purpose of the sequestration statute, viz., to compel an appearance, as in sequestration against a nonparty."

It is true, as the Chancellor observed, that there is a difference between sequestration and attachment in that under attachment a judgment may be rendered for the garnishee. However, this difference is not important for several reasons.

■ First, in an attachment proceeding where the garnishee appears, judgment is rendered against the nonappearing defendant to the extent of the property *in custodia legis*. Judgment is not rendered against the garnishee. See Woolley, Delaware Practice, § 1240; Womack v. De Witt, supra, 10 A.2d at 509. Only where the garnishee fails to appear can judgment be rendered against it. Superior Court Rule 5(aa) (2). But where the plaintiff and garnishee are one and the same, a judgment against the garnishee would never be rendered because, by virtue of having filed suit as plaintiff, the garnishee has, in effect, appeared. Hence the "incongruity" referred to by the Chancellor, wherein the plaintiff becomes judgment creditor and judgment debtor, never arises.

Second, the mere fact that under certain circumstances a plaintiff may obtain judgment against the garnishee should not preclude a party in control or custody of defendant's property from asserting a claim against such property when control is transferred to the Court.

Third, the Court in *Bland* emphasized the distinction between sequestration and attachment not in order to construe the Delaware attachment statute, but in order to demonstrate the inapplicability of an early Delaware decision holding that self-attachment was not permitted under New York law.[1]

In 71 A.2d at 68, fn. 4, the Chancellor observed that "authorities as to the right of self-attachment are divided", see Annos., 31 A.L.R. 712, 61 A.L.R. 1438. However, since 1950, the year of the *Bland* decision, the cases dealing with "self-attachment" that have been called to this Court's atten-

1. See Baugh & Sons v. Crowell Corp., 4 W.W.Harr. 231, 151 A. 718.

tion have permitted a plaintiff to attach property of the defendant which was in plaintiff's custody. See United States Steel Corp. v. Commercial Contract Corp., 168 F.Supp. 375, 379 (D.C.N.J., 1958); Norco Realty Corp. v. Margulies, 21 Conn.Sup. 357, 154 A.2d 757 (1959). This Court thinks this the better view.

For the reasons above I conclude that the writ is valid and that the defendants' motion to dismiss must be denied.

It is so ordered.