**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | N19C-01-166 EMD |
| CITY CLUB APARTMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM ORDER DENYING DEFENDANT CITY CLUB APARTMENT, LLC'S MOTION TO VACATE DEFAULT JUDGMENT**

Upon consideration of City Club Apartment, LLC's Motion to Vacate Default Judgment (the "Motion") filed by City Club Apartments, LLC ("CCA"); Phillips, Goldman, McLaughlin & Hall, P.A.'s Response in Opposition to City Club Apartment, LLC's Motion to Vacate Default Judgment (the "Response") filed by Phillips, Goldman, McLaughlin & Hall, P.A.("PGMH"); the Affidavit of Marc Newman; the affidavit of Jamie Robinson; the April 29, 2019 hearing on the Motion and Response; the letter, dated May 3, 2019, from Donald A. Gouge, Esq., to the Honorable Eric M. Davis and attached proposed answer and counterclaims; the letter, dated May 10, 2019, from Lisa C. McLaughlin, Esq., to the Honorable Eric M. Davis; the letter, dated May 14, 2019, from Donald A. Gouge, Esq., to the Honorable Eric M. Davis; the letter, dated May 17, 2019, from Donald A. Gouge, Esq., to the Honorable Eric M. Davis; all exhibits and attachments to the Motion, the Response and the various letters; the docket in *In re Morrow Park Holding LLC*, C.A. No. 2017-0036-TMR; the entire record of this civil proceeding, the Court has determined that no additional hearing is necessary on the Motion, the Response or the additional letter filings.

The Court, exercising its discretion on the facts presented here, finds that CCA has failed to demonstrate that mistake, inadvertence, surprise or excusable neglect exists to vacate the default judgment entered on March 8, 2019 (the "Default Judgment"). Accordingly, the Motion is **DENIED**.

## I. RELEVANT FACTS

### THIS CIVIL PROCEEDING

PGMH commenced this case with the filing of its complaint on January 16, 2019 (D.I. No. 1). PGMH had CCA served on February 13, 2019 (D.I. No. 4). CCA needed to file a response to the complaint by March 5, 2019.

On March 8, 2019, PGMH obtained the Default Judgment to the Plaintiff's Direction for Entry of Default Judgment Against City Club Apartments, LLP (D.I. No. 5).

The parties filed three items with the Court on March 28, 2019. First, CCA had its attorney file a notice of appearance (D.I. No. 6). Second, PGMH requested a certified copy of the Default Judgment from the Prothonotary (D.I. No. 7). Third, CCA filed the Motion (D.I. No. 8).

### THE CHANCERY ACTION

CCA is a third party defendant in a pending Delaware Court of Chancery case (the "Chancery Action").[1]

At one time, PGMH represented CCA in the Chancery Action. On October 16, 2018, PGMH moved to withdraw from its representation of CCA. The Chancery Court granted PGMH's request to withdraw on December 18, 2018. The Chancery Court gave CCA until January 17, 2019 to retain new counsel.

---

[1] *In re Morrow Park Holding LLC*, C.A. No. 2017-0036-TMR.

CCA failed to meet the Chancery Court's January 17, 2019 deadline. On January 18, 2019, another party in the Chancery Action moved for a default judgment (the "Default Motion") against CCA because CCA had not satisfied the January 17, 2019 court-ordered deadline. This finally prompted action from CCA. On February 22, 2019, counsel entered an appearance on behalf of CCA. In addition, CCA filed a response to the Default Motion. CCA blamed its dilatory conduct in the Chancery Court Action on the fact that it was negotiating payment issues with PGMH and engaging in "appropriate due diligence and securing the necessary resources to secure new representation." The Chancery Court denied the Default Motion.

CCA's counsel in the Chancery Action is not CCA's counsel in this civil proceeding. CCA has not provided any explanation why counsel in the Chancery Court Action could not appear in this civil proceeding.

## II. PARTIES CONTENTIONS

In support of the Motion, CCA makes an inadvertence/excusable neglect argument.[2] CCA argues that, with the "flurry of activity" in three lawsuits—the Chancery Action and two in the Court of Common Pleas of Allegheny County, Pennsylvania (the "State Actions")—and with the client out of the United States, CCA incurred a delay in retaining Delaware counsel to respond to this civil proceeding. In addition, CCA contends that: (i) it has a viable defense to PGMH's causes of action and (ii) PGMH will not suffer substantial prejudice as the Court entered the Default Judgment only two weeks before CCA filed the Motion.

PGMH opposes the relief sought in the Motion. PGMH contends that CCA failed to act reasonably despite knowledge of this civil proceeding. PGMH notes that, even though CCA was

---

[2] In the Motion, CCA contends that it has "demonstrated inadvertence." However, CCA relies on cases discussing "excusable neglect" and not "inadvertence." *See, e.g., Johnson v. American Car Wash, Inc.*, 2012 WL 2914186, at *2-4 (Del. Super. July 17, 2012)(excusable neglect); *Standard Linen Serv. V. Sezna*, 1980 WL 317950, at *2 (Del. Super. Nov. 21, 1980)(discussing excusable neglect standard and finding either "neglect or inadvertence").

3

having trouble obtaining counsel for this civil proceeding, CCA did not reach out to PGMH and ask for an extension until March 11, 2019—six days after the March 5, 2019 deadline to file a response to PGMH's complaint.  Moreover, PGMH provides that CCA did not even file the Motion until March 28, 2019.

### III. DISCUSSION

A motion to vacate a default judgment pursuant to  Civil Rule 60(b)(1) and (6) is addressed to the sound discretion of the Court.[3] "The proceeding is essentially equitable in nature, ruled by equitable principles, and the appeal is to the conscience of the Court."[4]  For public policy reasons that favor a trial on the merits to resolving cases by default judgment, Civil Rule 60(b) has been liberally applied.[5]  In furtherance of this policy, any doubts raised by the motion will be resolved in favor of the moving party.[6]

A party moving to vacate a default judgment under the rule has the burden of showing the following before the motion will be granted: "(1) excusable neglect in the conduct that allowed a default judgment to be taken; (2) a meritorious defense to the action that would allow a different outcome to the litigation if the matter was heard on the merits; and (3) a showing that substantial prejudice would not be suffered by the plaintiff if the motion is granted."[7] The Court will only consider the second and third prongs if a "satisfactory explanation has been established for failing to answer the complaint, e.g. excusable neglect or inadvertence."[8]

"Under Rule 60(b)(1), excusable neglect is defined as 'neglect which might have been the act of a reasonably prudent person under the circumstances.' But, a defendant 'cannot have the

---

[3] *Battaglia v. Wilmington Sav. Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977).
[4] *Kaiser-Frazer Corp. v. Eaton*, 101 A.2d 345, 353 (Del. Super. 1953).
[5] *Id.*
[6] *Verizon Delaware, Inc. v. Baldwin Line Constr. Co.*, 2004 WL 838610, at *1 (Del. Super. Apr. 13, 2004).
[7] *Id.*
[8] *Apartment Cmtys. Corp. v. Martinelli*, 859 A.2d 67, 72 (Del. 2004).

judgment vacated where [the defendant] has simply ignored the process.'"[9] Delaware has

adopted the "extraordinary circumstances" test for Rule 60(b)(6) motions.[10] The "extraordinary

circumstances" standard defines the words, "any other reason justifying relief," in Rule 60(b)(6)

as "vest[ing] power in courts adequate to enable them to vacate judgments whenever such action

is appropriate to accomplish justice."[11] "Because of the significant interest in preserving the

finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[12]

The Court does not find that CCA acted reasonably. The Court notes that CCA has

established a pattern of irresponsible and untimely conduct in Delaware Courts. CAA not only

failed to be diligent in this civil proceeding but also in the Chancery Court Action. CCA seems

to act only after deadlines have passed and other parties to the litigation decide to prosecute their

rights under the Civil Rules or court-ordered deadlines.

This is not like the situation in *Standard Linen Service v. Sezna*.[13] In *Standard Linen

Service*, the defendants had trouble retaining counsel due to one of the defendants being out of

the country and some disagreement as to who should be appointed counsel for the defendants.

Moreover, the defendants' counsel in *Standard Linen Service* reached out to the plaintiff before

the deadline to respond to the complaint had passed. Here, CCA knew of PGMH's complaint,

already had legal representation (counsel in Michigan, Illinois and, as of February 22, 2019,

Delaware) but still took no action in this civil proceeding until after entry of the Default

Judgment.

The Court does not find it reasonable that CCA should act only *after* an adversary spends

---

[9] *Stevenson v. Swiggett*, 8 A.3d 1200, 1204 (Del. 2010)(citing *Lee v. Charter Comm'ns VI, LLC*, 2008 WL 73720, at *1 (Del. Super. Jan. 7, 2008).
[10] *Jewell v. Div. of Soc. Serv.*, 401 A.2d 88, 90 (Del. 1979).
[11] *Id*. (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)).
[12] *Wilson v. Montague*, 19 A.3d 302, 2011 WL 1661561, at *2 (Del. May 3, 2011)(Table)(quoting *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 634 (Del. 2001)).
[13] 1980 WL 317950.

the time and effort to prosecute its rights. The record demonstrates that CCA is familiar with Delaware Courts, had active counsel in the Delaware Chancery Action but still did not reach out to PGMH for an extension. PGMH is not a stranger to CCA. CCA used PGMH in the Chancery Court Action. CCA is not an unsophisticated entity unfamiliar with litigation as it is actively litigating three other actions. Despite this, CCA did not act in this civil proceeding until after the Default Judgment had been entered.

Moreover, CCA did not disclose to the Court in the Motion (i) that it had Delaware counsel in the Chancery Court Action,[14] or (ii) why CCA did not use that counsel to communicate with PGMH prior to the March 5, 2019 deadline. CCA had the ability to retain Delaware counsel in the Chancery Court Action after the January 17, 2019 deadline, have that counsel note an appearance and file an opposition to the Default Motion by February 22, 2019. Here, however, CCA could not respond to PGMH's complaint in basically the same period of time—service of complaint on February 13, 2019 with a response due on or before March 5, 2019. Under such circumstances, the Court finds that CCA's action in ignoring this civil proceeding is not reasonable conduct by a party.

The Court has a significant interest in preserving the finality of its judgments. The Court will not vacate the Default Judgment in a situation where it appears that CCA has simply ignored the process and acted only after PGMH took further action in this civil proceeding. The Court finds that CCA has failed to establish a satisfactory explanation for failing to answer the complaint. As such, the Court holds that CCA has not demonstrated cause for the relief sought

---

[14] The Motion and supporting affidavits did not disclose that CCA had retained Delaware counsel in the Chancery Action in February 2019. Instead, the Court reviewed the docket in the Chancery Action and discovered that CCA had obtained Delaware counsel in that proceeding, had counsel note an appearance and file a response to the Default Motion.

in the Motion.[15]

## V. CONCLUSION

For the reasons set forth above, the Court shall **DENY** the Motion.

July 16, 2019
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: FileAndServeXpress

---

[15] As CCA failed to satisfy the first prong, the Court does not need to analyze whether CCA can satisfy the second and third prongs. *See, e.g., Apartment Cmtys. Corp.*, 859 A.2d at 72.